UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN VIGDOR, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>SUPER LUCKY CASINO, INC., et al.,<br><br>        Defendants. | Case No. 16-cv-05326-HSG<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 29 |

Pending before the Court is the motion to dismiss the First Amended Complaint filed by Defendants Super Lucky Casinos, Inc. and its President and Founder, Nicholas Talarico ("Defendants"). Dkt. No. 29 ("FAC"). For the reasons detailed below, the Court GRANTS the motion in part and DENIES the motion in part.

## I. BACKGROUND

Plaintiffs were early investors in Defendants' start-up company. FAC at ¶ 10. They decided to invest at the urging of Defendant Talarico, who stated that the investment could be converted — at Plaintiffs' discretion — into equity shares in the company. *Id.* ¶¶ 10–11, 28, 34–36. Accordingly, on January 25, 2012, Plaintiffs each invested $100,000 into the company and in exchange received a Convertible Promissory Note ("CPN"), with a principal amount of $100,000 and a 6% interest rate. *Id.* ¶¶ 10–12, 40; *see also id.*, Exs. B–C (CPN for each Plaintiff). The CPN could be converted to equity shares in the company under certain, limited circumstances. *See* CPN. The CPN and this conversion process were governed by a Note Purchase Agreement ("NPA"). *Id.*, Ex. A (NPA). Under the NPA, two circumstances warranted conversion: conversion would occur automatically if the company sold equity shares that grossed at least $750,000, and conversion could occur at Plaintiffs' option in the event of a corporate transaction,

such as a merger or sale of assets. *See* NPA at §§ 1(e), (i), 2.2(a)–(b).

In October and November 2015, Defendant Talarico repeatedly tried to persuade Plaintiffs to convert their CPNs because the company "wanted to clear debt off the books." FAC ¶¶ 63–64, 68. Plaintiffs refused, however, because Defendant Talarico offered a lower conversion rate than the rate to which Plaintiffs believed they were contractually entitled. *Id*. ¶¶ 64, 66, 68. According to Plaintiffs, when they refused, Defendant Talarico threatened to repay them the CPN principal and accrued interest. *Id.* Plaintiffs allege that the company then ceased all communication with them. *Id.* ¶ 18. The company even stopped sending monthly financial statements, despite having done so since Plaintiffs' initial investment in January 2012. *Id.*

Then on July 29, 2016, and again on September 15, 2016, Defendants attempted to repay Plaintiffs the CPN principal and accrued interest. *Id.* ¶ 19. The company sent letters stating that it "ha[d] exercised its right to repay the principal and accrued interest under that [CPN] dated January 25, 2012 . . . ." *Id.* Plaintiffs filed this action in response, claiming Defendants erroneously attempted to eliminate their conversion rights because the company had subsequently "exploded in value" and their $100,000 investments were now "worth a combined $10 million or more . . . ." *Id.* ¶¶ 13–14.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court may dismiss a complaint when it does not contain sufficient facts to state a plausible claim on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must accept all the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 556; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, the Court is not required to accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Scis. Sec. Litig.*, 536 F.3d

1049, 1055 (9th Cir. 2008); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). Nor is it required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

## III. ANALYSIS

Plaintiffs' claims are based on Defendants' alleged breach of two documents: the NPA and the CPN. The parties agree that California law governs the interpretation of the NPA and CPN. *See* FAC, Ex. A (NPA) ¶ 7.2 & B–C (CPNs) at ¶ 8. When interpreting contracts, the overarching goal is to effectuate the parties' intent. Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting."). "[I]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of the parties, that controls interpretation." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (Cal. Ct. App. 2003). In short, the plain language governs. Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit."); *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."). But where a contract is "capable of two or more constructions, both of which are reasonable," it is considered ambiguous. *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (Cal. 2006). When a contract is ambiguous, dismissal at the pleading stage is inappropriate. *See Diversified Capital Investments, Inc. v. Sprint Commc'ns, Inc.*, No. 15-CV-03796-HSG, 2016 WL 2988864, at *6 (N.D. Cal. May 24, 2016).

### A. Contract Claims

#### i. Breach of Contract

To state a claim for breach of contract, Plaintiffs must plead (1) the existence of the contract; (2) Plaintiffs' performance or excuse for nonperformance; (3) Defendants' breach; and (4) the resulting damages to Plaintiffs. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011). Plaintiffs must also identify which provision of the contract Defendants allegedly breached. *See Frances T. v. Vill. Green Owners Ass'n*, 42 Cal. 3d 490, 512 (Cal. 1986) (en banc).

3

The only element at issue here is whether the company breached the terms of the CPN and NPA. Plaintiffs allege that the company did so in three specific ways: (1) exercising its claimed right to repay Plaintiffs' investment and accrued interest without adequate notice or consent; (2) failing to provide Plaintiffs with the company's monthly financial statements; and (3) failing to convert Plaintiffs' notes to shares at the proper valuation price. The Court will address each of these alleged violations in turn.

### a. Repayment

Plaintiffs first argue that the company breached its contract by attempting to repay Plaintiffs their principal and accrued interest rather than converting the CPN to equity shares in the company. The CPN contains two provisions regarding the payment of principal and accrued interest. The company *must* repay investors when the Majority Note Holders demand it:

> Unless earlier converted in Conversion Shares pursuant to Section 2.2 of that certain Note Purchase Agreement dated September 26, 2011 among the Company, Lender and certain other investors (the "Purchase Agreement"), the principal and accrued interest *shall* be due and payable by the Company on demand by the Majority Note Holders at any time after the Maturity Date.

FAC, Ex. B (CPN) at 1 (emphasis added). The company also *may* "prepay" investors if it first obtains the written consent of the Majority Note Holders:

> Prepayment of principal, together with accrued interest, may not be made without the written consent of the Majority Note Holders.

*Id.* at § 1. Defendants rely on this second provision in asserting that they had the right to repay Plaintiffs. They state that they obtained consent from the Majority Note Holders.[1] Dkt. No. 29 at 8–9; *see also* FAC ¶¶ 74, 78. Plaintiffs respond that this second payment provision may only be invoked before the CPN maturity. Dkt. No. 33 at 7–8. The first repayment provision cited above refers to payment after the maturity date, FAC, Ex. B (CPN) at 1, and Plaintiffs argue that the

---

[1] This term is defined in the NPA as "the holders of a majority in interest of the aggregate principal amount of Notes outstanding as of the relevant time." NPA § 1(g).

4

second provision correspondingly refers to payment before the maturity date. *Id.*

Neither the CPN nor the NPA define "prepayment." The Court finds that, making all inferences in Plaintiff's favor as required at this stage, Plaintiffs' interpretation is as plausible as Defendants' competing interpretation that "prepayment" refers to payment before conversion. Given this ambiguity, the Court cannot conclude that Defendants' interpretation is correct as a matter of law on a motion to dismiss. Because Defendants attempted to repay Plaintiffs over a year after the January 25, 2015, maturity date, FAC ¶ 19, this theory of breach of contract survives the motion to dismiss. *See Twombly*, 550 U.S. at 556 (finding that in assessing motion to dismiss, court must assume that "all the allegations in the complaint are true").

### b. Financial Statements

Plaintiffs further claim that the company breached its contract by failing to provide Plaintiffs with the company's financial statements. However, Plaintiffs do not point to any provision in the contracts that requires such updates. *See Frances*, 42 Cal. 3d at 512 (plaintiffs must identify which provision of the contract defendants allegedly breached.).

Plaintiffs first cite to § 7.15 of the NPA, but that section only requires the company "to deliver to the Lenders such financial statements or information as the Company provides to its stockholders . . . ." FAC, Ex. A at § 7.15. Plaintiffs have not alleged that any information — let alone financial updates — was shared with stockholders but not with Plaintiffs.

Plaintiffs next cite to § 7.16 of the NPA, but that section only requires the company to provide additional information that an investor would "reasonably require to carry out the terms of [the contracts]" or "to be informed of the financial and business conditions and prospects of the company." *Id.* at § 7.16. Plaintiffs have not alleged why the financial statements were reasonably required. Absent this necessity, the company was not otherwise obligated to provide this information to Plaintiffs.

Plaintiffs lastly list statements that Defendant Talarico made to them before executing the CPN and investing in the company. According to Plaintiffs, Defendant Talarico promised to provide Plaintiffs with monthly updates. *See, e.g.*, FAC ¶¶ 53–54, 57–58. Plaintiffs attempt to argue that these pre-contract promises were a condition of their investment. Yet it is axiomatic

5

that the written terms of a contract govern. *See, e.g.*, Cal. Civ. Code § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."). Plaintiffs cannot rely on allegations about Defendant Talarico's earlier comments to state a breach of contract claim. The Court accordingly finds that this theory of breach fails. If Plaintiffs can allege facts consistent with the text of §§ 7.15 and 7.16 in support of their claim of contractual entitlement to financial statements, they may do so in an amended complaint.

### c. Conversion and Valuation

Plaintiffs lastly argue that the company breached its contract by failing to convert their CPNs to equity shares in the company, with a $4 million valuation cap. Here, the parties agree that under the CPN and NPA, conversion was only necessary after specific triggering events. "It is elementary" that "where [a] defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired." *Consol. World Invests., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (Cal. Ct. App. 1992).

Here, two circumstances would trigger conversion: conversion would occur automatically if the company sold equity shares that grossed at least $750,000, and conversion could occur at Plaintiffs' option in the event of a corporate transaction such as a merger or sale of assets. *See* NPA at §§ 1(e), (i), 2.2(a)–(b). Plaintiffs assert that they "are informed and believe that a triggering event occurred here." FAC at ¶ 48. In their opposition to the motion to dismiss, they also suggest that a triggering event must have occurred because Defendant Talarico would not otherwise have reached out to them in October and November 2015 to convert their shares. *See* Dkt. No. 33 at 9; *see also* FAC ¶¶ 63–64. Yet they do not state what triggering event occurred or even when it allegedly occurred. Without more, the Court cannot "draw the reasonable inference that the [company] is liable . . . ." *Iqbal*, 556 U.S. at 678. The Court finds that this theory of breach also fails. If Plaintiffs still want to pursue this theory and can allege the triggering event with more particularity, they may do so in an amended complaint.[2]

---

[2] Even assuming a triggering event occurred, Plaintiffs' apparent alternative "interpretation" of the valuation clause fails as a matter of law. *See* Dkt. No. 33 at 4–5. Section 3.3 of the CPN states

6

### ii. Covenant of Good Faith and Fair Dealing

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (Cal. Ct. App. 2012) (quotation omitted). The covenant exists to ensure that "each party [does] not [] do anything which will deprive the other parties thereto of the benefits of the contract . . . ." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (Cal. Ct. App. 1960). A party cannot interfere with the performance of the contract and it must do "everything that the contract presupposes that he will do to accomplish its purpose." *Id.*

Nevertheless, the implied covenant does not "alter" a party's existing rights or duties under a contract. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327, 349–52 (Cal. 2000) ("[W]hile the implied covenant requires mutual fairness in applying a contract's actual terms, it cannot substantively alter those terms."). Nor does the implied covenant merely duplicate a breach of contract claim. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1401 (Cal. Ct. App. 1990), *as modified on denial of reh'g* (Oct. 31, 2001) ("[A]s [the plaintiffs] have alleged nothing more than a duplicative claim for contract damages, the trial court was correct in sustaining a demurrer to this count without leave to amend."); *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (Cal. Ct. App. 1985) ("[B]reach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself."). Rather, the implied covenant supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Avidity Partners, LLC v. State*, 221 Cal. App. 4th 1180, 1204 (Cal. Ct. App. 2013) (quotation omitted).

Here, Plaintiffs claim the implied covenant was violated when Defendants repaid their

---

that the valuation cap will be $4 million only if the company fails to both (a) raise $100 million in convertible promissory notes; *and* (b) record gross revenue of $21,000 or more during any seven-day period prior to March 15, 2012. *See* CPN § 3.3(a)–(b). Consequently, Plaintiffs cannot, as a matter of law, pursue a theory that the valuation cap should be $4 million if the company fails to meet just one of the two benchmarks, because that theory directly contradicts the unambiguous language of the CPN. *Cf. Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 664 (9th Cir. 1998) ("[U]nfounded attempts at re-drafting contracts can and should be dismissed at an early stage . . . .").

investment with accrued interest without first obtaining Plaintiffs' consent. *See* FAC ¶ 118. They seek specific performance of their conversion rights under the CPN and NPA. *Id.* ¶ 121. Plaintiffs' claim of breach of the implied covenant consequently relies on the same acts — and seeks the same damages — as their claim for breach of contract. Further, tort recovery for breach of the covenant is available only in limited circumstances, generally involving a special relationship between the contracting parties, such as the relationship between an insured and its insurer. *Careau*, 222 Cal. App. 3d at 1398–99. Plaintiffs have not alleged any such special relationship. This claim, therefore, is dismissed as duplicative.

### B. Fraud Claims

Plaintiffs next allege that Defendants engaged in fraud by (1) misrepresenting that Plaintiffs had "full control" over converting their shares and (2) surreptitiously obtaining the Majority Note Holders' consent to convert Plaintiffs' shares. *See, e.g.*, FAC ¶¶ 128–31, 179–204.

Fraud claims and claims that "sound in fraud" or that are "grounded in fraud" must satisfy the heightened pleading requirements of Rule 9(b), which provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that the complaint must allege "the who, what, when, where, and how" of the alleged fraudulent conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). "Claims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).

The Court finds that Plaintiffs' fraud allegations do not meet this heightened pleading standard.

#### i. Fraudulent Inducement

Plaintiffs rely on four broad categories of statements that Defendant Talarico made when persuading Plaintiffs to invest in the company to support their fraud in the inducement claim: (1) Plaintiffs would be in full control of the conversion process; (2) Plaintiffs' consent was needed to alter that conversion right; (3) the valuation cap in the event of conversion would be $4 million;

8

and (4) Plaintiffs would receive monthly financial statements for the company. *See, e.g.*, FAC ¶¶ 29, 31, 34–36, 40, 130.

Fraud in the inducement "occurs when 'the promisor knows what he is signing but his consent is *induced* by fraud . . . .'" *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (Cal. 1996) (quoting *Ford v. Shearson Lehman Am. Express, Inc.*, 180 Cal. App. 3d 1011, 1028, (Cal. Ct. App. 1986)). To prove a claim, a plaintiff must establish: (1) a misrepresentation, false representation, concealment or nondisclosure; (2) knowledge of falsity; (3) intent to defraud or to induce plaintiff to enter into a contract; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (Cal. 1996).

First, Plaintiffs do not clearly allege how Defendant Talarico's statements were false. Instead Plaintiffs offer a long list of his statements and then explicitly allege that the agreements "reflected terms that matched Talarico's words . . . ." FAC ¶¶ 131(k), (m). That Defendants may have later breached these terms does not render them false. If Plaintiffs' theory is that Defendants never intended to abide by these terms, they must allege this explicitly. *See Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 157 (Cal. Ct. App. 1996) ("[I]n order to support a claim of fraud based upon the alleged failure to perform a promise, it must be shown that the promisor did not intend to perform at the time the promise was made."); *see also* Cal. Civ. Code § 1572 (defining fraudulent deceit to include, inter alia, "[a] promise made without any intention of performing it"); Cal. Civ. Code § 1710 (same). Yet as currently pled, Plaintiffs' allegations establish, at best, that Plaintiffs made assumptions about Defendants' interpretation of the agreements based on Defendant Talarico's statements. Plaintiffs offer no case law supporting the viability of such a claim.

Second, to the extent that Plaintiffs are using Defendant Talarico's words to alter the explicit terms of the agreements, these alleged misrepresentations are barred by the parol evidence rule. Under California's parol evidence rule, "[t]erms set forth in a writing intended by the parties to be a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous agreement." Cal. Civ. Proc. Code § 1856(a); *see also* Cal. Civ. Code § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or

stipulations concerning its matter which preceded or accompanied the execution of the instrument."). There is an exception for evidence to show that the agreement itself is invalid. *See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174 (Cal. 2013). This exception cannot, however, be used to rewrite the terms of the contractual agreements and to enforce this revision. *Id.*; *see also Groth-Hill Land Co., LLC v. Gen. Motors LLC*, No. C13-1362 TEH, 2013 WL 3853160, at *15 (N.D. Cal. July 23, 2013).

In short, Plaintiffs do little more than parrot the elements of fraud in the inducement without offering any additional detail. *See* Dkt. No. 33 at 17. Such generic allegations do not satisfy Rule 9(b)'s heightened pleading standard. *See Twombly*, 550 U.S. at 555.

### ii. Fraudulent Concealment

Plaintiffs' fraudulent concealment claim relies on similar conduct as their breach of contract claim. They allege that Defendants concealed information about Plaintiffs' right to conversion, including conversations with Majority Note Holders, and that they concealed information about the company's finances. The Court finds these generic allegations deficient.

Under California law, a plaintiff alleging fraudulent concealment must plead: (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result. *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (Cal. Ct. App. 2015).

First, Plaintiffs have not alleged sufficient facts to support their fraudulent concealment claim under Rule 9(b). They have failed to allege "the who, what, when, where, and how" of any of the alleged omissions. *Cooper*, 137 F.3d at 627. Instead they merely cite to the general allegations that are also used to support the breach of contract claim. *Compare* FAC ¶¶ 1–85 (general allegations) *with* ¶¶ 101–106 (breach of contract) *and* ¶¶ 195–96 (fraudulent concealment). They fail to even allege the existence of certain omitted facts. By Plaintiffs' own admission, their conversion rights were only triggered by certain events. Yet Plaintiffs do not

10

allege what triggering event occurred or when, let alone who concealed such an event. Similarly, Plaintiffs fail to plead that Defendants had any duty to disclose these alleged omissions. The omissions were either apparent from the face of the agreements, like the scope of Plaintiffs' conversion rights, or were conditional, like the financial statements. *See* Section III.A.i above. Plaintiffs cannot escape the pleading requirements by stating that Defendants have this information. *See* Dkt. No. 33 at 24. Even if the information is uniquely in a defendant's knowledge, "a plaintiff who makes allegations on information and belief [still] must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). A contrary rule would otherwise "nullify" Rule 9(b)'s heightened pleading standard. *Id.*

Second, as currently pled, this claim is duplicative of Plaintiffs' breach of contract claim. Plaintiffs acknowledge this, but respond that they are seeking tort remedies for Defendants' conduct rather than contractual ones. *See* Dkt. No. 33 at 24. However, the economic loss rule requires that Plaintiffs plead a *separate* tort to be entitled to tort remedies. *See, e.g.*, *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 (Cal. 2004) (holding that the economic loss rule did not bar a plaintiff's fraud and misrepresentation claim "because they were independent of [the defendant's] breach of contract."); *see also WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304 SC, 2014 WL 2621465, at *6 (N.D. Cal. June 12, 2014) (rejecting fraudulent concealment claim that mirrored the breach of contract claim and merely added allegations of fraudulent intent). Plaintiffs cannot simply retitle the same conduct "fraud." "Conduct amounting to a breach of contract becomes tortious only when it also violates an *independent* duty arising from principles of tort law." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (Cal. 1994) (en banc) (emphasis added). "[A]n omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty." *Id.* (quotation omitted). California courts have repeatedly highlighted insurance contracts as the paradigmatic example of a tortious breach of contract because of the "special relationship between insurer and insured." *Erlich v. Menezes*, 21 Cal. 4th 543, 552–53 (Cal. 1999). Here, in contrast, Plaintiffs do not allege that Defendants had any duty outside their contractual obligations to Plaintiffs.

11

###  iii. Securities Fraud

Plaintiffs allege that Defendants violated Rule 10b-5 by "ma[king] fraudulent misrepresentations and employ[ing] deceptive practices to induce Plaintiffs to invest" in the company. FAC ¶ 181. Plaintiffs largely cite the same pre-agreement statements from Defendant Talarico that they relied on for their fraudulent inducement claims. As with Plaintiffs' other fraud claims, more detail is needed for the claim to survive a motion to dismiss.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits the use "in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe . . . ." Commission Rule 10b-5, in turn, implements that provision by making it unlawful "(a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made . . . not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") has exacting pleading requirements for securities fraud claims. The complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Similarly, the complaint must state "specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008). Plaintiffs' generic allegations fail to sufficiently plead either falsity or scienter. *See* Section III.B.i above.

### C. Interference Claims

Plaintiffs also allege that Defendant Talarico interfered with the relationship between Plaintiffs and the company by reaching out to Majority Note Holders for their consent to Plaintiffs' repayment.

12

####   i.  Negligent and Intentional Interference with Prospective Economic Relations

Plaintiffs allege claims for both negligent and intentional interference with prospective economic relations against Defendant Talarico. Under California law, a plaintiff must allege that the defendant's conduct was independently "wrongful" by some "constitutional, statutory, regulatory, common law, or other determinable legal standard." *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (Cal. 2003). In short, the defendant must have engaged in independently actionable conduct other than the interference itself. *Id.* However, "a breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business." *JRS Prod., Inc. v. Matsuhsita Elec. Corp. of Am.*, 115 Ca. App. 4th 168, 183 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (Feb. 25, 2004); *see also Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 480 (Ca. Ct. App. 1996). Here, Plaintiffs have not alleged any independently wrongful conduct, aside from Defendant Talarico allegedly breaching terms of the agreement. This claim fails.

####   ii.  Intentional Interference with Contractual Relations

Plaintiffs' claim for intentional interference with contractual relations similarly fails. A plaintiff cannot bring an intentional interference claim against another party to the contract. *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 999 (Cal. 1977) ("[I]f an action is brought for interference with contractual relationship by one party to a contract against another who is also a party to that same contract, the grievance of the plaintiff is, in essence, breach of contract" and punitive damages are unavailable as a matter of law). This limitation similarly applies to a company's agents, including corporate officers, because a company "cannot act except through such agents." *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (Cal. 1990); *see also Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (Cal. 1973) ("[O]rdinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged"); *Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-CV-03656-LHK, 2015 WL 4692571, at *8 (N.D. Cal. Aug. 6, 2015) (applying rule in context of company's CEO).

Here, there is no dispute that Defendant Talarico is an officer of the company and acted

13

within that role. *See* FAC ¶ 4. Plaintiffs do not allege that in obtaining the Majority Note Holders' consent that Defendant Talarico acted *ultra vires* or otherwise in contravention of the company's interests. To the contrary, Plaintiffs implicitly acknowledge that he acted as the company's agent, Dkt. No. 33 at 20, and that the company benefited from his actions. FAC ¶¶ 148, 160, 174.

Plaintiffs cite several cases for the proposition that officers and directors may be held liable for their own, independently tortious conduct. *See, e.g., Frances*, 42 Cal. 3d at 507–511 (in the context of negligence and breach of fiduciary duty claims); *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1411 (Cal. Ct. App. 2014) (in the context of promissory estoppel and fraud claims); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1385 (Cal. 2000), *as modified on denial of reh'g* (Apr. 7, 2000) (in the context of interference with prospective business advantage). Yet none arose in the context of an intentional interference claim, which can only be brought against third parties to the contract. The Court finds no reason to deviate from the authority directly on point, which insulates corporate agents from claims for tortious interference. Accordingly, Defendant Talarico cannot be held liable for tortious interference with the company's contractual relations while acting as an officer of that company.

### D. Remedies

Plaintiffs also allege several remedies as distinct causes of action: declaratory relief, injunctive relief, accounting, and constructive trust. The Court finds that these fail as independent causes of action, although some may be available as remedies for other viable causes of action.

#### i. Declaratory Relief

A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action. *Hood v. Superior Court,* 33 Cal. App. 4th 319, 324 (Cal. Ct. App. 1995) ("[W]here a plaintiff has alleged a substantive cause of action, a declaratory relief claim should not be used as a superfluous second cause of action for the determination of identical issues subsumed within the first.") (quotation omitted). Here, Plaintiffs seek declaratory relief in the form of a judicial declaration "of the rights, duties, and obligations of the parties" under the NPA and CPN. FAC ¶¶ 86–91. Upon review of Plaintiffs' other causes of action, the Court finds that

the declaratory relief that Plaintiffs seek is entirely coextensive with the relief sought through their other causes of action. In particular, the "rights, duties, and obligations" that Plaintiffs identify are identical to the "rights, duties, and obligations" that Plaintiffs identify in their breach of contract claim. *Compare id.* ¶¶ 101–106 *with id.* ¶¶ 88–90. Thus, Plaintiffs' declaratory relief claim is duplicative and unnecessary.

### ii. Injunctive Relief & Accounting

Courts interpreting California law have also consistently classified injunctive relief and accounting as remedies and not separate causes of action. *See e.g.*, *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (holding that injunctive relief is a remedy and not, in itself a cause of action) (citing *McDowell v. Watson*, 59 Cal. App. 4th 1155, 1159 (Cal. Ct. App. 1997)); *Batt v. City and County of San Francisco*, 155 Cal. App. 4th 65, 67 (Cal. Ct. App. 2007) (holding that accounting "is not an independent cause of action but merely a type of remedy, an equitable remedy at that").

### iii. Constructive Trust

Plaintiffs' constructive trust claim fails for the same reason. *Batt*, 155 Cal. App. 4th at 67. Plaintiffs' own authority acknowledges that it is not a separate cause of action: "[A] constructive trust is not a substantive device but merely a remedy . . . ." *Felix v. Anderson*, No. 14-CV-03809-HSG, 2016 WL 3540980, at *2 (N.D. Cal. June 29, 2016); *see also Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1024 (N.D. Cal. 2013) (same).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss in part and DENIES the motion in part. The Court denies Defendants' motion to dismiss the breach of contract claim as to Plaintiffs' repayment theory, but otherwise grants the motion in its entirety. Plaintiffs may file an amended complaint within 21 days of the date of this Order. Should Plaintiffs choose to amend, they are limited to the claims previously alleged; they may not add additional claims or defendants. The Court further sets a Case Management Conference for August 1, 2017, at 2:00 p.m. in Courtroom 2, 4th Floor, Oakland, CA.

The Court recognizes that there is a pending motion to lift the discovery stay under the

PSLRA. *See* Dkt. No. 46. Although the briefing is not yet completed, the Court is inclined to enforce the stay unless and until Plaintiffs either eliminate the Securities Exchange Act claim from their amended complaint or the Court otherwise sustains its legal sufficiency post-amendment. *See SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of CA*, 189 F.3d 909, 913 (9th Cir. 1999).

**IT IS SO ORDERED.**

Dated: 6/23/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

16